**Betty Jo C. POPE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 738–87C.**

United States Claims Court.

April 13, 1989.

See also 15 Cl.Ct. 218.

David A. Churchill, Washington, D.C., for plaintiff.

James M. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

### ORDER

MOODY R. TIDWELL, III, Judge:

This action comes before the court on defendant's motion for summary judgment. At issue is whether the Army Board for Correction of Military Records (ABCMR) acted in a manner that was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence when it upheld a 1979 Physical Examination Board's (PEB) diagnosis of plaintiff as having schizophrenia, latent type, and when it denied plaintiff's request for reinstatement

after a formal PEB in 1981 re-diagnosed her with a personality disorder.

## FACTS

In November, 1977, Betty Jo C. Pope, plaintiff, was commissioned a first lieutenant in the United States Army Reserve and entered active duty as a Captain in the Army Nurse Corps on January 11, 1978. Following normal procedure, plaintiff's performance was observed by her superiors and documented in evaluations included in her military personnel records. One of the evaluations noted that plaintiff was unstable under stress, inflexible, and lacked the ability to communicate with the staff; when nursing judgment was required, plaintiff lacked understanding, perspective, and knowledge to adapt; and when pushed to any limit, plaintiff acted in an adverse manner. Further reports stated that plaintiff's basic nursing knowledge and skills were grossly deficient, that she was unable to recognize these inadequacies, and that her erratic behavior had an adverse and dangerous effect on patient care.

On March 2, 1979, plaintiff met with an Army chaplain for counseling. Plaintiff was very upset because her husband, who had previously left her several times throughout their marriage, had left again. During the counseling session, plaintiff allegedly "lost contact with reality" and the chaplain called in an Army psychiatrist. Later that same day, plaintiff was admitted to a hospital for psychiatric evaluation. A series of psychological tests ensued and the results were reviewed by a clinical psychologist, who reported that the data reflected a disorganized thought process, disassociated thinking and deviant verbalization, all of which were indicative of a schizophrenic process. His diagnostic impression was "[s]chizophrenia, prominent paranoid features likely."

On March 22, 1979, while plaintiff remained hospitalized, a three member Medical Examination Board (MEB) met to evaluate plaintiff's condition. Their review of the records and reports revealed, among other things, plaintiff's tangential speech and the danger she posed to herself and others. The board also noted that plaintiff, "expressed a paranoid delusional system of the hospital personnel leagued against her in an attempt to throw her out of the Army, take away her nursing license, prevent her from ever working again, and thus, starving her children." Using criteria set out in the Diagnosis and Statistical Manual, Second Edition (DSM II), the MEB unanimously diagnosed plaintiff as suffering from "Schizophrenia, latent type, acute, severe, with acute psychotic exacerbation," and found her unfit for further military duty.

Plaintiff contested the MEB findings and as a result, an informal PEB was held on May 3, 1979. The PEB confirmed the MEB's diagnosis of schizophrenia, rating plaintiff's medical condition as 30% disabling, and recommended that she be placed on the Temporary Disability Retired List (TDRL) pursuant to 10 U.S.C. § 1202 (1982). Four days later, plaintiff signed a form stating that she had been advised of the findings and recommendations of the PEB and checked a box corresponding to a waiver of a formal PEB. Subsequently, plaintiff was released from active duty, placed on the TDRL, and transferred to a Veterans Administration (VA) hospital. In December 1979 and December 1980, VA physicians questioned plaintiff's diagnosis of schizophrenia. One VA physician stated that plaintiff exhibited "no significant psychiatric problems" and there was no convincing evidence to support a diagnosis of schizophrenia. The report, however, characterized plaintiff's behavior as an "adjustment reaction to situational stress."

In 1980, a new diagnostic manual, DSM III, recharacterized the criteria for schizophrenia under which plaintiff was originally diagnosed as constituting a personality disorder. Under that criteria a TDRL evaluation in the spring of 1981 [1] reclassified plaintiff's condition as a "[m]ixed personali-

---

**1.** Plaintiff was medically examined as required by 10 U.S.C. § 1210 (1982), which mandates that a follow up physical examination be given at least once every eighteen months while an individual remains on the TDRL.

ty disorder, chronic, severe; manifested guardedness restricted affectivity, history of difficulty in controlling anger, feelings of persecution and unstable interpersonal relationships." The evaluation also noted that plaintiff still remained subject to transient psychotic episodes. An informal PEB met in October, 1981, and found the following: "acute psychotic reaction, resolved; slight impairment of social and industrial adaptability.... Current evaluation is not supportive of original diagnosis [of schizophrenia in 1979], however, member remains unfit by reason of history of above diagnosis [acute psychotic reaction]." Plaintiff disagreed with the Board's findings and requested a formal hearing. In response a formal PEB met on December 4, 1981 and concluded that the psychotic episodes experienced by plaintiff were a symptom of a personality disorder. Since a personality disorder was not a basis for medical unfitness, plaintiff was subsequently removed from the TDRL on February 22, 1982.

The PEB, however, did not have the authority to determine whether plaintiff was suitable for active duty as a nurse; that decision was to be made by the Army Nurse Corps Selection Board (ANCSB). 10 U.S.C. § 1211(a)(4) (1982) provides that once a reservist member has been deemed fit, the member has the right to be reappointed, with his or her own consent. In accordance with statutory requirements and army procedures, plaintiff completed a form which required her to select whether or not she wished to be reappointed. Plaintiff's choices included: reappointment in active duty, reappointment not on active duty, or non-reappointment. Plaintiff chose reappointment in the Army Reserve in active duty. On February 26, 1982, she was notified of her non-selection for active duty by the ANCSB. Following this notification, plaintiff was honorably discharged. It appears from the record that plaintiff could have been placed in the Army Reserve not in active duty, but she failed to make that selection.

On November 11, 1984, plaintiff applied to the ABCMR for a correction of her military records. Plaintiff claimed that the 1979 PEB determination was inaccurate and asked that the past diagnosis be expunged from her records and concomitantly requested to be reinstated to active duty. The Army Surgeon General's Consultant in Psychiatry reviewed her records and concluded that the 1979 PEB diagnosis of schizophrenia latent type and the 1981 determination of a personality disorder were each compatible with the diagnostic criteria set forth at their respective times. The Consultant concluded that plaintiff was unfit for duty in 1979, and that her repetitive psychotic episodes made her unfit for further military duty.

In August of 1987, the ABCMR found that the 1979 decision to place plaintiff on the TDRL because her diagnosis of schizophrenia was correct and that once she was removed from the TDRL in 1981 she was entitled to reappointment in the reserve, but not necessarily inactive duty. The ABCMR further concluded that the ANCSB did not abuse its discretion in denying plaintiff's application. Again dissatisfied, plaintiff filed a complaint in this court on December 3, 1987, pursuant to the Tucker Act, 28 U.S.C. § 1491 (1982).

## DISCUSSION

Defendant's motion for summary judgment contended that no factual issues were in dispute and that the ABCMR's decision to uphold the 1979 PEB determination was justified based upon substantial evidence in the record. Furthermore, defendant argued that the ABCMR's determination to deny plaintiff reinstatement to active duty was neither arbitrary, nor capricious, nor contrary to law or regulation. Plaintiff, in opposition, alleged that her 1979 waiver of a formal PEB hearing was not voluntary, which presented a genuine issue of material fact thus defeating defendant's motion. Defendant also requested additional discovery to address alleged inconsistencies within the ABCMR's decision.

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). The substantive law applicable to

the case determines which facts are material, and thus, only disputes over facts that might affect the outcome of the suit will properly preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is genuine if the evidence is such that a reasonable jury could turn a verdict for the non-moving party. *Id.; Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Defendant has the burden of establishing that there are no genuine material issues in dispute and that it is entitled to judgment as a matter of law. *Id.* at 157, 90 S.Ct. at 1608. As the party opposing the motion, plaintiff has the burden of providing sufficient evidence, not necessarily admissible at trial, to show that a genuine issue of material fact indeed exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Any evidence presented by plaintiff is to be believed and all justifiable inferences drawn in her favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1609.

Plaintiff asserted that since the ABCMR findings were based in part on the 1979 PEB the question of the voluntariness of plaintiff's waiver constituted a genuine issue of material fact that would preclude summary judgment. Plaintiff presented evidence, in the form of a sworn statement by Ms. Pope, that plaintiff was threatened with loss of hospital patient privileges and continued separation from her children if she did not concur with the informal PEB findings. Although defendant questioned whether voluntariness was an issue, defendant nonetheless contended that the assertion of coercion was reflective of plaintiff's behavior of paranoia in 1979. Defendant cited medical reports of the 1979 MEB and 1981 PEB decisions for support. The 1979 MEB noted plaintiff's expressed paranoid delusional system of the hospital personnel and their alleged attempt to dismiss her from the Army. The informal PEB in 1981 diagnosed plaintiff as having feelings of persecution, one relevant indicia of a character disorder.

While it is true that plaintiff's allegation could present a factual discord, such a dispute will only defeat a motion for summary judgment if it is material and deals with a genuine issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In this case, the standards governing the reversal of the ABCMR's decisions determine which facts are critical or irrelevant in relation to defendant's motion. *Id.* at 251–53, 106 S.Ct. at 2511–13. The issues at bar are twofold: First, whether the apparently conflicting diagnoses in the PEB decisions of 1979 and 1981 evidence that the 1979 determination was incorrect and thus should not have been upheld by the ABCMR; and second, whether plaintiff was entitled to reinstatement in active duty once the 1981 PEB found her to be physically fit. Neither of these issues turns on whether plaintiff voluntarily waived her right to a formal PEB. The court thus finds the facts of the voluntariness of the 1979 waiver to be immaterial to the outcome of this suit. The basis of this suit involves a review of whether the ABCMR acted arbitrarily or capriciously when it affirmed the 1979 diagnosis. Furthermore, the scope of this court's review is limited to the record placed before the ABCMR. Evidence and argument of the alleged coercion was presented to the ABCMR, which found that, "[plaintiff's] contention of coercion is uncorroborated." The court concurs. Though voluntariness was raised by both parties in support of their respective arguments, plaintiff did not present sufficient evidence to support her position beyond the allegation that her waiver was improper. Although plaintiff attempts to cloud the issues at hand, the court is not shadowed by her tactics.

The first determinative issue to be addressed is plaintiff's challenge to the ABCMR's affirmation of the 1979 PEB determination of schizophrenia. Plaintiff argued that the ABCMR's decision to uphold the 1979 PEB diagnosis in light of an inconsistent PEB ruling in 1981 was arbitrary. Plaintiff also directed the court's attention to doctors' reports from the VA Hospital which disagreed with the 1979 PEB decision. Defendant countered that both PEBs

were consistent with the diagnostic criteria applicable at their respective times and that the ABCMR did not act in a manner that would warrant reversal.

█ It is a generally recognized principle of law that correction board decisions must be given great deference when reviewed by the court.

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless [s]he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

*Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979). When substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result. *Holman v. United States*, 181 Ct.Cl. 1, 8, 383 F.2d 411, 415 (1967).

█ The reasonableness of the ABCMR's action in this case is best deduced from a review of the facts. Plaintiff's apparent emotional problems came to a head in 1979. At that time, plaintiff underwent psychological tests in an Army hospital and was evaluated by an MEB and an informal PEB. All the aforementioned reviewers diagnosed plaintiff according to the DSM II categorizations in effect at the time and concluded that she was suffering from schizophrenia, latent type. This diagnosis was administratively disqualifying and resulted in plaintiff's placement on the TDRL. In 1980, the DSM III manual was issued, in which the symptomatic criteria for schizophrenia, under which plaintiff was originally diagnosed, was reclassified as a personality disorder. Accordingly, in 1981, plaintiff was re-evaluated under this new criteria and was found to be suffering from a personality disorder. Plaintiff was thus determined to be physically fit and subsequently removed from the TDRL.

While the outcome of the 1979 PEB and 1981 PEB differed, they were consistent with the diagnostic criteria in effect at the respective times. After a review of plaintiff's records, the Army Surgeon General's Consultant in Psychiatry noted in an advisory opinion to the ABCMR that:

> Subject clearly had psychotic episodes in November–December 1980. The diagnosis of mixed personality disorder 21 September 1981 is compatible with the diagnostic criteria of DSM III. It seems inappropriate to evaluate subject's mental condition in 1979 in retrospect with diagnostic criteria that were not introduced till 1980. By the standards of DSM II, subject met criteria for schizophrenic reaction, latent type and thus was unfit by the standards that were operable at the time.

Inopposite to plaintiff's contentions, the 1979 and 1981 PEB determinations affirm the consistency and propriety of the 1979 diagnosis.

Plaintiff suggested that the favorable reports of the doctors from the VA Hospital should have been given greater weight by the ABCMR and that those evaluations constituted further proof that the board's decision was arbitrary. For example, plaintiff quoted one VA doctor who noted, in 1980, that "a review of the report from the Medical Board certainly does not provide substantial evidence for a schizophrenic diagnosis ..." In rebuttal to plaintiff's statement, defendant finished the same quote, which continued, "although the paranoid personality could be substantiated and apparently was ..." In light of the totality of the evidence, the court finds that the VA reports, by themselves, do not illustrate that the ABCMR acted in an arbitrary or capricious manner. When reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the military board. *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985) (citing *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983)). To give effect to the VA reports, the court would be required to re-evaluate the 1979 diagnosis, placing greater emphasis on the

VA opinions, with the practical result of the court acting as a military review board. The court will not perform in such a manner. It is not for the court to determine, *ab initio,* whether or not plaintiff was unfit for the military service at the time of her release. *Dzialo v. United States,* 5 Cl.Ct. 554, 561 (1984).

The court thus finds that the ABCMR's affirmation of the 1979 PEB was not arbitrary or capricious. The ABCMR had substantial evidence upon which to base its conclusion, and relying on that evidence in its totality, did not act in manner that would require this court to overturn the board's eventual decision. Plaintiff has not presented sufficient proof to meet the heavy burden required to sustain reversal of the ABCMR's decision. *See Sanders,* 219 Ct.Cl. at 298, 594 F.2d at 811.

■ The second issue to be addressed is whether the ABCMR's decision to deny plaintiff reinstatement into active duty after she was removed from the TDRL was proper. The court is bound to review the ABCMR's action using the same arbitrary, capricious, or contrary to law or regulation standard applicable to the first issue. If a reservist on the TDRL is found physically fit to perform her duties, that person may be reappointed with his or her consent as specified in section 10 U.S.C. § 1211 (1982).[2] Although plaintiff was determined to be physically fit in the 1981 PEB decision, with the effect of removing her from the TDRL, an evaluation as to whether plaintiff was suitable for active duty had to be made by the ANCSB before plaintiff could be reinstated. After making that evaluation, the ANCSB denied plaintiff's application for active duty. The regulatory basis for that decision, Army Reg. 40–501, para. 2–34, states:

The causes for rejection for appointment, enlistment, and induction are—

b. Character and behavior disorders where it is evident by history and objective examination that the degree of immaturity, instability, personality inadequacy and dependency will seriously interfere with adjustment in the military service as demonstrated by repeated inability to maintain reasonable adjustment in school, with employers and fellow-workers, and other society groups.

It is apparent that defendant acted within regulatory guidelines when it chose not to reinstate plaintiff to active duty. The court notes that plaintiff's instability and personal inadequacy were thoroughly delineated in her records. It is not necessary for the court to reiterate the specific instances of plaintiff's emotional history to find that the ABCMR did not act contrary to law or regulation when it concurred with the ANCSB's ruling which denied plaintiff active status.

Plaintiff suggested the ANCSB's rejection was not supported by the medical records placed before the board and thus was arbitrary or capricious. The records before the ABCMR and the court reflected plaintiff's problems, which were precipitated by stress. As defendant pointed out, even though the instance of plaintiff's husband leaving her was a temporally confined occurrence, the nature of military life, especially that of active duty, would continually subject plaintiff to stress. Although the court does not have the ANCSB record before it, the ABCMR, in affirming the ANCSB denial, noted the following:

13. At the time of selection board consideration, [plaintiff] had a personality disorder that would have disqualified her for appointment as a commissioned officer. She had a history of psychiatric disorders and abnormal symptomology including paranoid delusional thinking

---

**2.** Section 1211 provides:

(a) With his consent any member of the Army or Air Force whose name is on the temporary disability retired list, and who is found to be physically fit to perform the duties of his office, grade, or rank under section 1210(f) of this title, shall—

(4) if a commissioned, warrant or enlisted Reserve, be reappointed or reenlisted as a Reserve for service in his reserve component in the reserve grade held by him when his name was placed on the temporary disability retired list, or appointed or enlisted in the next higher reserve commissioned, warrant, or enlisted grade as the case may be....

system that became normal after administration of strong dosages of antipsychotic medication. She remained subject to transient psychotic episodes under conditions of stress.

14. Had the [plaintiff] been returned to active duty she would have likewise been returned to the stresses of military life. And there are no guarantees that she might not, at some point, be exposed to the severe stresses of combat. Yet she would have been responsible for the medical care, including administration of drugs, to sick or injured soldiers at a time when she might well be at risk of having a transient psychotic episode.

15. Given these facts, the Board cannot say that the selection board abused its discretion in denying the applicant a return to active duty status.

After a review of the law and related evidence, the court finds sufficient support to uphold the ABCMR ruling. It did not base its denial solely on the medical records before it, but also considered plaintiff's poor military evaluations prior to the establishment of her emotional problems—both of which were replete with instances of plaintiff's instability and personal inadequacy. As already noted, the function of the court is not to determine whether or not a member of the military service is fit to fulfill certain responsibilities upon her release from the TDRL. That is a decision of which deference is best left to the military department. *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985). Even if a different conclusion could be reached based upon the evidence, it is not for the court to substitute its own judgment when reasonable minds could differ. *Id.* In addition, since plaintiff offered no evidence to the court as to why she should be entitled to reinstatement to the Reserve inactive duty, the court is not convinced that the difficult standard for reversing the ABCMR's ruling has been met.

## CONCLUSION

The court thus finds that the ABCMR decision to uphold the 1979 PEB determination of schizophrenia and to deny reinstatement after plaintiff was re-diagnosed with a personality disorder in 1981 was neither arbitrary nor capricious, nor contrary to law or regulation. Plaintiff argued that the favorable 1981 PEB decision evinced the impropriety of the 1979 PEB determination. Plaintiff's contention is without merit: the diagnoses were reflective of the operable standards at their respective times. When plaintiff was originally diagnosed, DSM II was in effect. The 1979 PEB, in accordance with the guidelines of that manual, classified plaintiff as schizophrenic, latent type. In 1981, when plaintiff was diagnosed a second time, DSM III was in effect. The 1981 determination was consistent with the DSM III guidelines and characterized plaintiff as suffering from a personality disorder. As to the denial of plaintiff's request to be reinstated into active duty by the ANCSB, the ABCMR was again justified in its decision. According to 10 U.S.C. § 1211(a)(4) and Army Reg. 40–501, para. 2–34, the Army was entitled to deny reinstatement into active duty to any person who displayed emotional instability or personal inadequacy. Based not only upon plaintiff's medical evaluations, but also her military personnel reports prior to her emotional history, plaintiff evidenced the disqualifying traits. Although the court is sympathetic to plaintiff's position, the court is bound to uphold the ABCMR decision unless it can be said that its decision met the heavy standard for reversal. It clearly did not. The court thus affirms the ABCMR decision and grants defendant's motion for summary judgment. The complaint is accordingly dismissed and the Clerk is ordered to take the necessary actions in accordance therewith. No costs.

IT IS SO ORDERED.