# In the United States Court of Federal Claims

No. 20-204C
(Filed July 26, 2022)

* * * * * * * * * * * * * * * * *
*  
**HAYWOOD ROYAL,**      *      Motion for Judgement on the
     *      Administrative Record;
     Plaintiff,      *      Instrumentality of War; Arbitrary
     *      and Capricious; Board for
     v.      *      Correction of Naval Records;
     *      Combat Related Special Compensation
**THE UNITED STATES,**      *  
     *  
     Defendant.      *  
     *  
* * * * * * * * * * * * * * * * *

## Opinion

**FUTEY,** *Senior Judge*

Plaintiff, Mr. Haywood Royal, filed this action before the Court after he was denied Combat Related Special Compensation (CRCS) by the Board for Correction of Naval Records(BCNR). Mr. Royal served in the US Navy from 1979 to 1990 as a Cryptologic Technician. AR 001. Plaintiff alleges that as part of his service, in 1985, he was ordered to stand guard in 12 hour shifts at a vault door that was being reconstructed, exposing him to dust, fumes, and fibers from the construction. Id. He was diagnosed with Sarcoidosis in 1989, and subsequently placed on Temporary Disability Retirement in January 1990. Id. He was transferred to the Permanent Disability Retirement List in 1994. Id. Plaintiff alleges that his Sarcoidosis was caused by his exposure to the fumes and dust from the vault door. As a result, Mr. Royal applied for combat related disability benefits and was denied.

On September 6, 2021, plaintiff filed a Motion for Judgement on the Administrative Record in which he asks this Court to either overrule the decision of the BCNR or remand for further consideration. ECF 26. The government had filed the Administrative Record at that point and subsequently filed a Cross Motion for Judgement on the Administrative Record on October 21, 2021. ECF 21 & 29.

In its Motion for Judgement on the Administrative Record, the government argues that the decision of the Combat Related Special Compensation (CRSC) Board to deny combat related disability benefits was supported by substantial evidence and was not arbitrary or capricious. Id.

This matter is now ripe for disposition.

I.    BACKGROUND
        a. Factual Background

Mr. Royal joined the United States Navy on June 15, 1979. ECF 26 at 10. Mr. Royal was assigned to RAF Mildenhall in England from 1983 and 1986. AR013. While stationed there, plaintiff alleges that he was assigned to guard a vault, while the vault was being reconstructed. AR013. Plaintiff also alleges that he was exposed to fumes, dust, and fibers from the reconstruction of the vault door while standing guard over the vault's classified materials. Id.

Plaintiff produced chest x-rays from 1985 and 1986. ECF 26 at 16. 1985 chest x-ray was normal, while the 1986 chest x-ray established that plaintiff had chronic inflammatory granulomatosis.  Id. Plaintiff was not diagnosed with sarcoidosis until 1989, which was at least two years after he left RAF Mildenhall permanently. AR 010.  The BCNR thought that "creates uncertainty as to when his disability was actually incurred and the specific events that may have caused it". AR010.

Mr. Royal then served continuously until January 5, 1990 when the Naval Department placed him on the temporary disability retirement list due to sarcoidosis with a 30 percent rating. Id.  He was moved to the permanent disability list on October 1, 1994 with a 60 percent rating for bilateral lung damage. Id.

        b. Procedural Background

Plaintiff filed an application for Combat Related Special Compensation (CRSC) on November 15, 2018. ECF 26 at 10. The BCNR denied this claim in December of 2018, finding that there was insufficient evidence that the lung condition was caused by combat related events. AR 001. Plaintiff filed a request for reconsideration, arguing that his time spent guarding the vault while the door was being reconstructed qualified under the Instrumentality of War criteria. AR001. On March 12, 2019, the CRSC denied the reconsideration request, concluding that

while the construction of the vault door may have caused Mr. Royal's lung condition, the vault did not qualify as an Instrumentality of War.

Mr. Royal then sued in this Court on February 25, 2020. AR002. In April, upon the government's voluntary motion, the Court remanded the case to the BCNR. Id. The BCNR was directed to:

(1) consider plaintiff's claim filed in this case and previously brought to the Combat-Related Special Compensation (CRSC) Board, and in particular address whether a vault is an instrumentality of war pursuant to Section E3.P5.2.2.4 of DoDI 1332.38; address whether plaintiff's exposure to fumes, dust, and fibers resulting from the reconstruction of a vault door caused his medical conditions within the exception of Section E3.P5.2.2.4 of DoDI 1332.38; and address the CRSC Board's statement that even though "it is possible that exposure to dust and fibers from a vault may have caused the service connected disabilities listed above, this does not make the vault an instrumentality of war";

(2) address any other issues, evidence, or arguments plaintiff submits in writing to the BCNR within 45 days of this order; and

(3) determine and explain whether plaintiff is entitled to any relief, including correction of records or pay, based upon any errors or injustices found.

Order to Remand, ECF 6. The BCNR again denied plaintiff's claims. AR 005. Plaintiff then filed an amended complaint and a motion for judgment on the administrative record. ECF 20 & 26.

## II.   Discussion
### a.  Standard of Review

Once a plaintiff has sought relief from a military correction board, the board's determination binds plaintiff unless he can demonstrate that the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. Roth v. United States, 378 F.3d 1371, 1381 (Fed. Cir. 2004); Koretsky v. United States, 57 Fed. Cl. 154, 158 (2003). A board's decision is arbitrary and capricious "if the board fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence

before the board, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Van Cleave v. United States, 70 Fed. Cl. 674, 679 (2006). "When reviewing the decisions of the [reviewing board] under the arbitrary and capricious standard, the scope of review is extremely narrow." Champagne v. United States, 35 Fed. Cl. 198, 208 (1996) (citing Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285 (1974)).

This standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1983). The Court does not serve as a "super correction board." Skinner v. United States, 219 Ct. Cl. 322, 327, 594 F.2d 824 (1979). Therefore, "when substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." Pope v. United States, 16 Cl. Ct. 637, 641 (1989). "When reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the military board." Id. Under this standard, the Court's review is limited to the administrative record before the BCNR. See Wyatt v. United States, 23 Cl. Ct. 314, 319 (1991).

Plaintiff acknowledges the arbitrary and capricious standard of review. He then advocates for an additional standard of review which he calls the interest of justice standard. He cites a variety of sources for this standard of review.[1] Plaintiff admits that "In the CFC setting, the Interest of Justice Standard remains vague". ECF 26 at 20. Because the standard is vague and the plaintiff is not able to point to any authority that allows the Court to apply it in this case, the Court will instead follow the standard of review as stated above that is consistent with prior caselaw.

---

[1] The citations include the United States Court of Federal Claims Patent Rules, *Marbury v. Madison*, 5 U.S. 137, 164, 2 L. Ed. 60, 69 (1803), and St. Regis Paper Co. v. United States, 368 U.S. 208, 229, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961) (Black, J., dissenting)

## b. The BCNR's Decision to Deny Disability Benefits Was Supported by Substantial Evidence.

At the board, the burden of proof that a disability is combat-related rests with the claimant. AR007; see DoD Directive 1332.41(3.2.3); AR 179. At this Court, a plaintiff can only meet his considerable burden by presenting "cogent and clearly convincing evidence" that the board's decision was in error. Stuart, 123 Fed. Cl. at 421. As stated above, the case was remanded back to the BCNR by the Court and instructed to consider specific issues. The board expressly made findings and stated each factor that it was instructed to consider. AR002. The board then specifically addressed each factor that it was to consider and provided its rationale based on the evidence in the record. AR002-006.

For Mr. Royal to be eligible for the CRSC benefits he is seeking, his lung damage must be a combat related disability. 10 U.S.C. § 1413a(c)(2). To qualify, the disability must have occurred "(A) as a direct result of armed conflict; (B) while engaged in hazardous service; (C) in the performance of duty under conditions simulating war; or (D) through an instrumentality of war." 10 U.S.C § 1413a(e)(2). Plaintiff's disability was not a result of armed conflict, while engaged in hazardous service, or in the performance of duty under conditions simulating war. He alleges that his injury was caused by an instrumentality of war, specifically the vault he was guarding at RAF Mildenhall.

The Department of Defense has issued some guidelines about what qualifies as an instrumentality of war. An instrumentality of war is:

> A vehicle, vessel, or device designed primarily for Military Service and intended for use in such Service at the time of the occurrence of the injury. It may also be a vehicle, vessel, or device not designed primarily for Military Service if use of or occurrence involving such a vehicle, vessel, or device subjects the individual to a hazard peculiar to Military Service. This use or occurrence differs from the use or occurrence under similar circumstances in civilian pursuits. There must be direct causal relationship between the use of the instrumentality of war and the disability, and the disability must be incurred incident to a hazard or risk of the service.

Department of Defense Instruction (DoDI) 1332.38, Section E2.1.17; AR190. The DoD has further elaborated:

> Incurrence during a war period is not required. A favorable determination is made if the disability was incurred during any period of service as a result of such diverse causes as wounds caused by a military weapon, accidents involving a military combat vehicle, injury, or sickness caused by fumes, gases, or explosion of military ordnance, vehicle, or material. However, there must be a direct causal relationship between the instrumentality of war and the disability. For example, an injury resulting from a Service member falling on the deck of a ship while participating in a sports activity would not normally be considered an injury caused by an instrumentality of war (the ship) since the sports activity and not the ship caused the fall. The exception occurs if the operation of the ship caused the fall.

DoDI 1332.38, Section E3.P5.2.2.4; AR226. The CRSC board looked at these guidelines and determined that the vault in question was not an instrumentality of war. One thing they relied on was a DoD decision that burn pits were not an instrumentality of war. AR 057. In that decision the DoD found that when lung damage that was caused by fumes from a burn pit, the incinerated material would have to be considered an instrumentality of war for the injury to be considered caused by an instrumentality of war. Id. The burn pits themselves did not qualify as instrumentalities of war. Id. The CRSC board analogized the burn pits to the vault to argue that the fumes from the construction would only qualify as instrumentalities of war if the vault itself was an instrumentality of war. Id.

Plaintiff makes two arguments. First, he claimed that under E3.P5.2.2.4, if an object is designed primarily for a military purpose, then it should be classified as an instrumentality of war. Plaintiff points to specific military specifications that vaults must adhere to and argues that military vaults are therefore primarily designed for military use. Second, he argues that a military vault could be used to safeguard "arms, ammunition, and explosives" and therefore is unique from civilian vaults. Pl. MJAR at 15.

As the BCNR pointed out, vaults are a common civilian structure and are not uniquely military in nature. AR 019. The BCNR points to the CRSC board's determination that they are being used for the same purpose as a civilian safe, "i.e. to safeguard valuable items from potential theft". AR 010. The BCNR also points out that the plaintiff has not proven that the reconstruction used construction

standards and techniques specific to the military. Instead, the reconstruction of the vault appeared to use standard civilian construction techniques. Id. Furthermore, while plaintiff discusses at length the requirements and specifications of a GSA Security Vault, there is no discussion of anything that distinguishes the military vault from a civilian vault. Civilian vaults often protect sensitive information and must meet rigorous requirements. While the information in the documents plaintiff was guarding might be unique to the military, that is not enough to make the vault an instrumentality of war. Finally, the GSA specifications are also not enough to make a vault designed primarily for military purposes. As plaintiff admits, there are GSA specifications for a wide variety of everyday items, including items as commonplace as office chairs, and those would not qualify as an instrumentality of war. ECF 26 n.30. [2]

Plaintiff also argues that a military vault could hold "arms, ammunition, and explosives" and therefore is unique to the military. Id. As plaintiff points out, "in the military setting, an Armory Vault Door and Security Vault Door differs in both use and GSA requirements." Id. The Security Vault Doors are used to protect classified documents, while the Armory Vault Door is used to protect "arms, ammunition, and explosives." The vault that Mr. Royal was guarding was therefore a Security Vault Door, and the fact that Armory Vault Doors exist is irrelevant to the case.

The record contains sufficient evidence to support the BCNR's conclusions. They considered and addressed every argument raised by plaintiff. They found that a vault is not an instrumentality of war based on their reasonable interpretation of the DoD guidelines and regulations. This finding precludes Mr. Royal from getting the combat related disability benefits that he is seeking.

### c. The BCNR's Decision to Deny Disability Benefits Was Not Arbitrary or Capricious.

---

[2] While the vault in this case does not qualify as an instrumentality of war, that does not mean that no other vault could qualify as one. If a vault was made of unique materials because of the military nature or if the reconstruction methods were unique to the military, then a vault could qualify as an instrumentality of war. The plaintiff would have the burden of proof and have to demonstrate that the vault was distinguishable from a civilian vault. The plaintiff in this case has failed to do so.

A board's decision is arbitrary and capricious "if the board fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Van Cleave v. United States, 70 Fed. Cl. 674, 679 (2006). Plaintiff alleges that the board was arbitrary and capricious when it failed to rebut the medical evidence that plaintiff offered.

Plaintiff provided the board with a clean chest x-ray from 1985, as well as a chest x-ray from 1986 that showed chronic inflammatory granulomatosis. He was then diagnosed with sarcoidosis in 1989. Plaintiff claims this "establishes plaintiff was Stage 1 within 6 months post the exposure". ECF 30 n. 16. As the government points out, the same page of the record states that "[t]he relatively long term course and the relative asymptomatic nature of the patient suggest a chronic process, . . . rather than infectious or malignant." AR090.

The CRSC board admitted "the possibility that [plaintiff's] exposure to dust and fibers from the vault reconstruction may have caused [plaintiff's] service connected disabilities." AR 004. The advisory opinion pointed out that the gap between the time of alleged exposure and the eventual diagnosis "creates uncertainty as to when his disability was actually incurred and the specific events that may have caused it." AR010. The board concludes that this analysis is irrelevant because the vault was not an instrumentality of war so even if the fumes caused Mr. Royal's injuries, it would not change the outcome of the case.

Plaintiff believes that his evidence has "established causation" and that the BCNR has "failed to rebut" this evidence. ECF 30 at 18, 20. Plaintiff has the burden of proof, however, and the BCNR does not have to rebut anything. Furthermore, the advisory opinion did raise a point that potentially rebuts plaintiff's argument. The long time gap makes it difficult to say that plaintiff's evidence has proven causation. Finally, as the BCNR points out, even if Mr. Royal's illness was caused by exposure to the fumes from the reconstruction of the door, he still is not entitled to the combat related benefits unless the vault door is an instrumentality of war. As the board has found that it is not, the causation analysis becomes irrelevant.

Plaintiff also argues that the BCNR failed to give a "full response" and therefore, the "Record is not ready for review". ECF 30 at 10. Plaintiff believes that

the BCNR was arbitrary and capricious when it fails to rebut plaintiff's response to the advisory opinion. ECF 30, 20. The BCNR, however, considered plaintiff's additional briefing and added it to the chronology of relevant events with a summary. AR 015. Plaintiff argues that the BCNR should have gotten another advisory opinion to rebut his additional briefing. The BCNR addressed the arguments he raised in this brief in its opinion, and plaintiff provides no statutory or legal duty that requires the BCNR to get another advisory opinion. The fact that the BCNR gave the plaintiff the last word was in fact a benefit to the plaintiff.

Since the plaintiff failed to provide cogent and compelling evidence that the BCRN's review was arbitrary or capricious, the plaintiff's arguments fail. Precedent says that "[w]hen reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the military board." Pope v. United States, 16 Cl. Ct. 637, 641 (1989). Here the BCNR acted reasonably and considered all the evidence submitted. They laid out their rationale and supported it with facts from the administrative record. As a result, the Court will not overrule their findings.

### III.    Conclusion

For the above stated reasons, the following is hereby ordered:

1.  Defendant's Motion for Judgement on the Administrative Record is **Granted.**
2.  Plaintiff's complaint is **DISMISSED.**

The Clerk is directed to enter judgement accordingly. No costs.

**IT IS SO ORDERED.**

s/ Bohdan Futey
**Bohdan Futey**
Senior Judge