Eric L. **GANT**, pro se, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 03–1911C.

United States Court of Federal Claims.

Dec. 20, 2004.

Eric L. Gant, Grand Prairie, TX, plaintiff pro se.

Claudia Burke, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. LCDR Daniel Shanahan, General Litigation Unit, Washington Navy Yard, of counsel.

## *OPINION*

CHRISTINE ODELL COOK MILLER, Judge.

Before the court is defendant's motion to dismiss a *pro se* plaintiff's complaint seeking

relief for a variety of wrongs allegedly committed by the military up to, during, and after an honorable discharge on disability from the United States Navy. Among the numerous descriptive paragraphs of grievances that the Court of Federal Claims does not have jurisdiction to consider is a claim entitled "wrongful discharge." Defendant seeks dismissal of plaintiff's claim on the merits, pursuant to RCFC 12(b)(6), arguing that plaintiff is bound to the disability determination because, at the time of his discharge, he waived review by a formal disability board of a preliminary disability rating. Argument is deemed unnecessary.

## BACKGROUND

On August 12, 2003, plaintiff filed a *pro se* complaint in the Court of Federal Claims seeking relief on six counts.[1] The complaint is 55 pages of non-chronological factual allegations, including an attachment of an additional 137 paragraphs [2] that are referred to by—and appear to reprise—the preceding allegations. Because of the manner of presentation and ambiguities in the complaint, this court is challenged to extract a coherent claim based on the facts as pleaded. Ultimately, it appears that more than one scenario can be wrested from the allegations, and more than one legal theory ascribable to the claim, as well. The court reviews all of them in order to provide the *pro se* plaintiff's claims with the consideration to which they are entitled.

Plaintiff's military career began in 1984 when he enlisted in the United States Navy (the "Navy"). He details the history of his military service, but material to his claims before the Court of Federal Claims are the allegations that describe his history of worsening medical symptoms and the treatment by his superiors that allegedly led to his discharge. Plaintiff describes various symptoms, including fatigue, that motivated him to seek medical treatment. As a result, the

physicians provided plaintiff with some orders—not identified in the complaint—that his superiors ignored. Plaintiff alleges that he began complaining about this treatment, which precipitated a sequence of events, including retaliatory acts, that led to his wrongful discharge. By issuing plaintiff false adverse fitness reports, denying home awaiting orders, and denying shore duty station, the Navy allegedly executed a scheme with the intent to remove plaintiff from service.

Eventually, the Navy convened a preliminary Physical Evaluation Board (the "PEB") to review plaintiff's medical history for a determination of fitness for duty. (It is not clear at whose behest the PEB was convened.) In an attachment to the complaint, plaintiff explains that on April 10, 1997, he received via "telecopier" a document entitled "Preliminary Findings of the Physical Evaluation Board Proceedings." The PEB recommended separation from active duty with severance pay due to Chronic Fatigue Syndrome, for which the PEB assigned a 10% disability rating. Plaintiff also explained in his complaint that the PEB's discharge recommendation was based on a finding of a temporary disability.

Initially, plaintiff "express[ed] disappoint [*sic*] of not being 30% because [he] believe[d] based on promulgated literature that such a rating would entitle the plaintiff to Temporary Disability Retirement List [(the "TDRL")] with the option of continuation of service." Compl. filed Aug. 12, 2003, ¶ 47. On July 10, 1997, per his allegations, plaintiff signed a waiver, which forfeited the right to rebut the findings of a PEB. Plaintiff quotes the waiver:

> "From LT(jg) Eric Lionel Gant to President, Physical Evaluation Board Subject: Election of Options for Preliminary/Findings of Unfit for Duty"

---

1. Concurrently with his complaint, plaintiff filed a motion for leave to proceed in forma pauperis and a motion for the appointment of counsel. The former was granted and the latter denied.

2. Plaintiff included an introductory paragraph with this attachment, wherein he requested the

court to take judicial notice pursuant to Fed. R.Evid. 201 of each fact contained in the attachment. This court accepts these paragraphs as part of the complaint and denies plaintiff's motion for judicial notice.

a. Signature of Initials—"stating I accept the preliminary/findings. I understand that it is subject to legal review before becoming final. I waive my right to a formal hearing."

*Id.* Attachment ¶ 33.

Plaintiff states that he had no attorney present and had "limited time to consider the findings." Compl. ¶ 121. Plaintiff otherwise was not informed of a "continuation of service alternative (i.e. 'inactive reserves')." *Id.* ¶ 48. According to the complaint, plaintiff could have been granted "adequate time to recuperate," which would have allowed him to return to full duty after temporary leave. *Id.* He "informed his physician of his disagreement with [the] findings[.]" *Id.* ¶ 120.

Plaintiff was honorably discharged on September 17, 1997, after thirteen years[3] of service. Pursuant to his discharge, plaintiff received disability severance pay of $62,089.20. Plaintiff alleges that the Navy "annotated the plaintiff's discharge certificate to reflect a permanent disability instead of a temporary disability[.]" *Id.* ¶ 62.

The remaining allegations of the complaint describe events that occurred after discharge. The allegations depict a troubling post-discharge experience. In chief, they involve certain treatment plaintiff underwent while confined at Charter Peachford Behavioral Health System of Atlanta, Georgia. In addition to forcing him to undergo experimentation, the Navy also allegedly conspired to silence plaintiff from voicing his complaints. The principal act of conspiracy alleged is the Navy's conspiracy to prohibit plaintiff from entering into law school. Plaintiff explained that the Navy frustrated his attempt so that, by the time he was learned in the law, the statute of limitations would bar his claims.

Plaintiff has voiced his grievances regarding this alleged treatment to various officials, including numerous members of Congress, the FBI, the CIA, and the President of the United States. He also has filed other civil complaints in other courts, the nature of which is not described.

Plaintiff's complaint seeks relief on the following six counts: (1) wrongful discharge; (2) violation of the Military Whistle Blower Protection Act and DoD Directive 7050.6; (3) violation of the Due Process clause of the Fifth and Fourteenth Amendments; (4) gross negligence; (5) civil fraud; and (6) civil conspiracy under 42 U.S.C. § 1985 (2000).

Count One alleges that the Navy discharged him in retaliation for his complaints regarding inadequate medical care and his superiors' continuous violation of doctors' orders. Although plaintiff alleges that he did sign the waiver, thereby accepting the informal PEB's preliminary findings of a disability rating of 10%, he complains that he was not informed of his alternatives to the discharge. Moreover, plaintiff complains of the Navy's alleged change of the discharge certificate to reflect a finding of permanent disability, instead of temporary disability, which he understood the original PEB findings to reflect.

Count Two complains of the Navy's alleged reprisal for his complaints, including certain military assignments, which otherwise he would not have received, certain unidentified acts of harassment causing him duress during the medical evaluation process, the wrongful discharge, and "the Navy's interference to [*sic*] plaintiff's post graduate admission acceptance process." Compl. ¶ 57.

Count Three alleges violations of plaintiff's right to due process based on various acts, which plaintiff describes as arbitrary and capricious. Count Four charges the Navy with negligence by subjecting plaintiff to "human subject experimentation," which apparently occurred while plaintiff was confined involuntarily at Peachford and continued thereafter. Count Five alleges that the Navy's failure to inform him of an alternative to discharge prior to him waiving the right to dispute the PEB's preliminary findings constituted fraud. Finally, Count Six alleges that the Navy conspired against him to prevent him from entering into law school.

---

**3.** The thirteen years is a figure that comes from the complaint; defendant asserts that plaintiff served on active duty for nine years. The court accepts as true plaintiff's allegations pleaded in the complaint; in any event, the difference is not germane to defendant's motion.

Defendant moved to dismiss plaintiff's complaint based on waiver. However, because the intersection of waiver with other doctrines under military pay law had not been developed fully, this court ordered supplemental briefing. Defendant's response by new counsel thoroughly answered the questions posed and provided an even more well-reasoned, and well-supported, argument for its motion. Likewise, plaintiff's *pro se* supplemental brief was fully responsive, manifesting that he was able to address the key issues.

## DISCUSSION

Defendant filed its motion to dismiss under RCFC 12(b)(6) arguing that plaintiff failed to state a claim upon which relief can be granted because he waived any right to judicial review of the disability determination by his acceptance of the preliminary PEB findings. Defendant also argues that this court lacks jurisdiction of all other claims, which this court treats as a motion to dismiss under RCFC 12(b)(1), even though it was not styled as such.

### 1. *Standard of review*

Defendant moved under RCFC 12(b)(6) for a dismissal of plaintiff's "wrongful discharge" claim. This rule enables a party to raise by motion the defense of failure to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir.2002). "[T]he plaintiff's well-pleaded factual allegations are accepted as true and all reasonable factual inferences are drawn in its favor." *Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1326 (Fed.Cir.2004). Therefore, the court must deny a motion under RCFC 12(b)(6) "if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

When defendant filed its motion, however, it presented this court with documentary exhibits not subject to judicial notice. Rule 12(b) prohibits a court from considering such matters outside the pleadings unless "the motion ... [is] treated as one for summary judgment and disposed of as provided in RCFC 56[.]" Pursuant to Rule 12(b), this court has treated defendant's motion as one seeking summary judgment and notified the parties by order dated October 5, 2004.

Defendant also disputes jurisdiction over plaintiff's other claims. A challenge to the court's subject matter jurisdiction requires examination of the court's "general power to adjudicate in specific areas of substantive law[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999). Like all inferior federal courts, the Court of Federal Claims operates under its statutory grant of authority, and its ability to redress an alleged wrong is derivative therefrom. *See Massie v. United States*, 226 F.3d 1318, 1321 (Fed.Cir.2000). An order in excess of jurisdiction is a void order, *see Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), and consequently—both to avoid wasting resources and to uphold the constitutional and statutory framework that defines this court's powers—"subject-matter delineations must be policed by the courts on their own initiative even at the highest level[,]" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *see Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) ("We therefore have a special obligation to satisfy ourselves of our own jurisdiction.").

RCFC 12(b)(1) expedites compliance with these precepts by enabling parties to raise by motion, as a defense to a claim, lack of subject matter jurisdiction. The party seeking to invoke this court's jurisdiction carries the burden of establishing it. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998). When asserting lack of jurisdiction over a claim presented in a complaint, a defendant can invoke Rule 12(b)(1) by either disputing the truth of the jurisdictional facts alleged therein, *see, e.g., Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed.Cir.

2003), or by challenging the sufficiency of the allegations on the face of the complaint, *see, e.g., Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004). Presented with the former argument, the court acts as finder of fact, and the plaintiff must establish the requisite jurisdictional facts by a preponderance of the evidence. *Toxgon Corp. v. BNFL, Inc.,* 312 F.3d 1379, 1383 (Fed.Cir.2002). For a facial challenge, however, the court accepts all well-pleaded facts as true, *Folden,* 379 F.3d at 1354, and makes "reasonable factual assumptions and draw[s] plausible inferences in favor of the [plaintiff]." *Ephraim v. Brown,* 82 F.3d 399, 401 (Fed.Cir.1996); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995).

This court is mindful that plaintiff is a *pro se* litigant, entitling him to certain leniencies afforded to all parties proceeding *pro se.* This is particularly so on motions to dismiss, for "[i]t is settled law that the allegations of [a *pro se*] complaint, however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotations omitted); *see Vaizburd v. United States,* 384 F.3d 1278, 1285 n. 8 (Fed.Cir. 2004) (noting that pleadings drafted by *pro se* parties "should accordingly not be held to the same standard as parties represented by counsel"). Courts have "strained our proper role in adversary proceedings to the limit, searching [the record] to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285, 1292 (1969). However, while "[t]he fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, ... it does not excuse its failures, if such there be." *Henke,* 60 F.3d at 799. The leniency afforded *pro se* litigants with respect to mere formalities therefore does not relieve them of jurisdictional requirements. *Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987).

### 2. *Jurisdiction*

The majority of the arguments revolve around plaintiff's claim for wrongful discharge. Because of difficulties stemming from ambiguities in the lengthy complaint, this court addresses plaintiff's other claims so as to pare the remaining portion of the complaint to its cognizable claim.

The claims which defendant argues are jurisdictionally deficient are the following specifically pleaded counts: violation of the Military Whistle Blower Protection Act and DoD Directive 7050.6; violation of the Fifth and Fourteenth Amendments Due Process Clauses; gross negligence; civil fraud; and civil conspiracy under 42 U.S.C. § 1985.

The Tucker Act provides the Court of Federal Claims with jurisdiction

> to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

Tucker Act, 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A plaintiff must therefore "identify a separative source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, the source must be 'money-mandating.'" *Fisher v. United States,* 364 F.3d 1372, 1376 (Fed.Cir.2004) (citations omitted).

The Military Pay Act, 37 U.S.C. § 204 (2000), provides the necessary money-mandating source of law which allegedly was violated. It is well established that this statute is money-mandating under the test in *United States v. Mitchell,* 463 U.S. 206, 219, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). *See Roth v. United States,* 378 F.3d 1371, 1384 (Fed.Cir.2004).[4]

---

4. If plaintiff's claims can be construed to plead not wrongful discharge but entitlement to disability benefits, plaintiff's money-mandating source of law is 10 U.S.C. § 1201 (2000). Section 1201 requires the Secretary to pay retirement funds for qualifying disabilities and is "reasonably amenable to the reading that it is money-mandating." *Fisher,* 364 F.3d at 1379–80.

Insofar as plaintiff is alleging violations of other sources of substantive law, plaintiff cannot establish jurisdiction over those claims by simply establishing jurisdiction over a separate claim. Thus, seeking relief for alleged violations of constitutional provisions, statutes, regulations, executive directives, and common law provisions requires plaintiff to establish that those sources are also money-mandating.

 Plaintiff complains that the Navy violated his rights to due process under the Fifth and Fourteenth Amendments. As the "due process clause does not obligate the government to pay money damages[,]" *Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir.1995), the Court of Federal Claims lacks jurisdiction over an alleged due process violation unless the claim is for an illegal exaction. *Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1363 (Fed.Cir. 2002).

 For a different reason, plaintiff's claims for negligence, fraud, and conspiracy are deficient for jurisdictional purposes. The Tucker Act expressly excludes from the court's jurisdiction "cases sounding in tort." 28 U.S.C. § 1491(a)(1). Claims for negligence, *Doe v. United States*, 100 F.3d 1576, 1585 (Fed.Cir.1996) (negligent misrepresentation), and fraud are both torts and therefore cannot be considered by the Court of Federal Claims, *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997) ("Because [plaintiffs'] complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims.") (alterations in original); *L'Enfant Plaza Props., Inc. v. United States*, 227 Ct. Cl. 1, 10–11, 645 F.2d 886, 891–92 (1981); *Carter v. United States*, 62 Fed.Cl. 66, 72 n. 5 (2004). Plaintiff's claim for conspiracy also sounds in tort because the acts that furthered the goal of the conspiracy themselves sound in tort.

 This court also has carefully reviewed the other regulations and statutes pleaded, specifically the Navy Military Whistleblower Protection Act, 10 U.S.C. § 1034 (2000), and plaintiff's civil conspiracy claim, and can find no basis for jurisdiction over those claims.

*See Hernandez v. United States*, 38 Fed.Cl. 532, 536–37 (1997) (holding that Military Whistleblower Protection Act is not money-mandating for purposes of Tucker Act jurisdiction); *Anderson v. United States*, 22 Cl. Ct. 178, 179 n. 2 (1990) (jurisdiction over claims arising under Civil Rights Act resides exclusively in district courts), *aff'd*, 937 F.2d 623 (Fed.Cir.1991) (table); *Rogers v. United States*, 14 Cl.Ct. 39, 50 (1987), *aff'd*, 861 F.2d 729 (Fed.Cir.1988) (table).

Plaintiff argues that the court can consider whether the Federal Government's acts violated constitutional provisions, statutes, or other sources of law during its adjudication of claims for which it does have jurisdiction. The authority is the obverse: The existence of a claim beyond the court's jurisdiction does not foreclose consideration of a claim within the court's jurisdiction. *See Holley v. United States*, 124 F.3d 1462, 1466 (Fed.Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim[.]"). The same is true when the Federal Government violates a money-mandating source of law, but does so negligently; the presence of a negligence allegation will not defeat jurisdiction. *See Awad v. United States*, 301 F.3d 1367, 1373–74 (Fed.Cir.2002) (negligent contract performance does not preclude Tucker Act jurisdiction over claim "sounding in contract," not tort). Thus, plaintiff is correct insofar as this court can consider the exact nature of alleged wrongful governmental conduct when it violates a money-mandating source of law. *See Holley*, 124 F.3d at 1466 ("The determination of [plaintiff's] entitlement to remedy under 37 U.S.C. § 204 may include consideration of whether his removal violated constitutional rights.").

3. *Summary judgment*

 What survives the jurisdictional attack is plaintiff's claim that his discharge was wrongful, and defendant does not contest jurisdiction over this claim. *See Martinez v. United States*, 333 F.3d 1295, 1321 (Fed.Cir. 2003) (noting that the Court of Federal Claims generally has subject matter jurisdiction over wrongful discharge cases). In-

stead, it argues that plaintiff waived any objection to the discharge when he failed to contest the findings of the preliminary PEB. Defendant notes that the waiver does not give rise to a jurisdictional defect, as plaintiff is challenging the determinations of the PEB.[5] *See McHenry v. United States,* 367 F.3d 1370, 1377 (Fed.Cir.2004) (holding that voluntary retirement does not preclude Tucker Act jurisdiction over a claim for disability benefits). Defendant argued in its moving papers that by voluntarily foregoing a right to challenge the preliminary findings of the PEB, plaintiff waived any further judicial review.

In this court's order of October 5, 2004, the parties were asked whether the Federal Circuit or other precedential authority has held that a waiver of a right to contest the preliminary findings of an informal PEB effectuates a waiver of judicial review in the Court of Federal Claims. Answering in the affirmative, defendant refers this court to *Maier v. Orr,* 754 F.2d 973 (Fed.Cir.1985). *Maier* involved a servicemember's claim for wrongful discharge. Plaintiff had been diagnosed with a severe allergy to a required smallpox vaccination, and a preliminary PEB found her unfit and recommenced discharge with a 20% disability rating and severance pay. Plaintiff waived her right to contest these findings and was thereafter discharged. She later petitioned a military corrections board for back pay and retroactive re-enlistment due to an incorrect diagnosis. Although the board found "probable error or injustice," it allowed her only to re-enlist. She appealed to a federal district court—waiving any damages in excess of $10,000, *see* 28 U.S.C. § 1346 (2000), which issued a writ of mandamus in her favor for all requested relief.

On appeal the Federal Circuit concluded that the district court abused its discretion. *Maier,* 754 F.2d at 984. It found numerous errors, primarily involving the lack of any

evidence that the discharge was procedurally deficient or wrong in any way and that the court therefore "impermissibly intruded on an internal military matter[.]" *Id.* The court further noted that the district court erred by not considering the waiver: "Not only did the district court ... find no lack of due process, but Maier nowhere challenged the board's finding that 'the applicant concurred with the findings and recommendations of the PEB which was sustained at all levels of review.'" *Id.*

Defendant reads *Maier* to hold that a waiver precludes judicial review by referring to the Federal Circuit's statement that, "'having chosen not to challenge her discharge at the time it was issued, by formal hearing or otherwise, the district court could properly have held that she had waived any right, if one existed, to challenge that military determination in a judicial forum.'" Def.'s Br. filed Nov. 3, 2004, at 8 (quoting *Maier,* 754 F.2d at 984). Contrary to defendant's reading of *Maier,* this court understands this statement to be dictum.

The Federal Circuit has touched on the waiver issue since *Maier,* but not precisely on point.[6] The closest case[7] is *McHenry,* 367 F.3d 1370, in which a servicemember contested the findings of the informal PEB, but waived certain appeal rights after the formal hearing by signing the following statement: "'I agree with and accept the findings of the regional hearing panel. I am not going to appeal or rebut the final decision and hereby waive my right to the fifteen day appeal period which follows a formal hearing. I respectfully request my case be processed without delay for separation/retirement.'" *Id.* at 1375. Quoting *Maier,* the Federal Circuit noted that plaintiff's claim "may also have been barred because he accepted the decision of the second PEB[.]" *Id.* at 1377 n. 6. The court, however, did not reach the issue

---

5. Although entitled as "wrongful discharge," plaintiff's claim disputes the disability rating—a determination by the informal PEB.

6. The Federal Circuit currently has before it an appeal from the Court of Federal Claims which involves this precise issue. *Van Cleave v. United States,* 60 Fed.Cl. 291 (2004), *appeal docketed,* No. 04–5133 (Fed.Cir. Aug. 16, 2004).

7. In an unpublished, non-precedential decision, the Federal Circuit ruled that accepting an informal PEB rating did not divest the Court of Federal Claims of jurisdiction. *See Poole v. United States,* 100 Fed.Appx. 829, 2004 WL 1303389 (Fed.Cir. May 24, 2004) (unpubl.).

because the Government admitted that it had waived the argument below, and, "[s]ince the [waiver] issue is not jurisdictional, the government's waiver is effective." *Id.; see Nickerson v. United States,* 35 Fed.Cl. 581 (1996) (same).

The waiver, as it is quoted by plaintiff, simply states that the signatory waives his right to a "formal hearing." 10 U.S.C. § 1214 prohibits the Secretary of the Navy from retiring or separating a servicemember for physical disability without a formal hearing unless waived. Plaintiff understands now—and acknowledged then—that he was giving up this right. Navy regulation SEC-NAVINST 1850.4c, § 5200(c) (July 1993), explains that the formal "hearing provides an opportunity for the member to present additional material to support his or her case."

By waiving a formal hearing, plaintiff prevented the Navy from itself having an opportunity to entertain any claim or objection and to develop a full record that this court now could review. The Navy effectively was deprived of the opportunity to correct its own errors—if they ever existed. Agencies must have these opportunities. *See United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."); *Stewart v. United States,* 222 Ct.Cl. 42, 52, 611 F.2d 1356, 1361 (1979) ("[A]gencies and departments should first be given a chance to correct their own errors and to permit the Government to mitigate or avoid claims that

might otherwise be created and have to be litigated in the judicial system.").

Allowing plaintiff to maintain a claim after waiving it earlier would render the waiver meaningless. As defendant stated, "waiver operates to prevent [plaintiff] from manipulating the system by seeking the best of both worlds—the certainty of a guaranteed payout upon discharge and the ability to exploit the limited record for financial gain at a later time." Def.'s Br. filed April 29, 2004, at 11.

In keeping with the guidance of the Federal Circuit in *Maier,* quoted in its recent *McHenry* decision, the court rules that plaintiff waived his right, if he had one, to proceed in court by failing to alert the military to his objections and to take advantage of the opportunity for a formal hearing. He was given an opportunity to contest the finding of unfitness for duty, along with the disability rating, and he declined it. On these facts this court finds that he waived review.[8]

The only way plaintiff could void his waiver and maintain a claim before the court would be to show that his act of signing the waiver was involuntary. The parties seem to agree implicitly that the "voluntariness" of plaintiff's act of signing the waiver is an issue governed by precedential decisions on the question of whether a discharge was voluntary. Both parties fail to recognize that, in fact, they skip a step. Defendant acknowledges jurisdiction, but then cites jurisdictional cases to support a Rule 12(b)(6) dismissal. Moreover, defendant's reply brief is entirely an argument on the jurisdictional issue of the voluntariness of retirement: "To rebut the presumption of voluntariness, [plaintiff] must allege specific facts." Def.'s Br. filed July 26, 2004, at 2.[9]

---

8. Were plaintiff to prevail, the effect of such a ruling would be to deny the military the right to establish an intermediate board of review for disability cases. *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381 (1962), does not compel that a formal PEB must pass on a disability claim; rather, the case holds that a claim for disability benefits does not accrue until either a formal disability review board or a military corrections board passes on it. By waiving a formal board, plaintiff did follow the route prescribed by *Friedman.*

9. Defendant additionally states in its supplemental brief that plaintiff's claim never accrued, citing *Friedman,* 159 Ct.Cl. 1, 310 F.2d 381. This is another jurisdictional argument. If true, it may be somewhat anomalous to conclude, as defendant does, that by electing to accept the preliminary findings "his claim never accrued, and he has waived judicial review." Def.'s. Br. filed Nov. 3, 2004, at 6. This would suggest that one act creates both a jurisdictional defect and a merits-based defect, such that the court could rule that the claim fails under Rule 12(b)(6) even though the court lacks jurisdiction. This is incorrect, however, because the Federal Circuit has commented favorably on the court's ability to find, on the merits, that such a waiver precludes

The issue is what analysis governs voluntariness of a waiver that precludes review. Neither party directs the court to any cases on point, and this court is not aware of any. Without an alternative provided by the parties, this court will apply the law that governs voluntariness of discharge in this nonjurisdictional context.

Plaintiff must have pleaded facts sufficient to establish that his waiver was involuntary, and, in response to defendant's motion which challenges that he lacked evidentiary support, plaintiff must come forward with an affidavit or similar showing. He did neither, although plaintiff attempts to argue that the waiver should be invalidated because he was induced into signing it by means of a misrepresentation and that he was otherwise under duress.

An act induced by misrepresentation can render that act involuntary. *See Tippett v. United States,* 185 F.3d 1250, 1255 (Fed.Cir. 1999) (discussing how misrepresentation can render military retirement or discharge involuntary). A misrepresentation "can be caused by providing misleading information or by failing to provide relevant information. Information is considered misleading if a reasonable person would have been misled by the representation." *Id.* (citation omitted). The only misrepresentation that appears to be pleaded is one related to what benefits plaintiff could have received had he received a higher (30%) disability rating. As defendant points out, however, plaintiff's belief that he would have been entitled to placement on the TDRL is erroneous because he did not have the required years of active duty to qualify for the TDRL, regardless of the disability rating. *See* 10 U.S.C. §§ 1201, 1202.

As to his assertion in his argument that the he was under duress when he executed the waiver, plaintiff makes no allegation, and certainly none bolstered by evidence that is considered on summary judgment, that any circumstances suggest duress. He claims to have lacked counsel, but he does not proffer any requirement that he be represented by counsel. Plaintiff claims not to have been presented with any alternative, but this is

judicial review. *See McHenry,* 367 F.3d at 1377

belied by his signing the waiver form, where he affirmatively refused the alternative of contesting the disability rating before a formal PEB. He has raised other points, all of which this court has reviewed and none of which enable him to overcome defendant's arguments.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion for summary judgment is granted as to Count 1.

2. Defendant's motion is granted as to Counts 2 through 6, and they are to be dismissed for lack of jurisdiction.

3. The Clerk of the Court is directed to enter judgment for defendant.

4. No costs.

n. 6; *Maier,* 754 F.2d at 983–84.