Charles VAN CLEAVE, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. 03–1765C.

United States Court of Federal Claims.

June 24, 2005.

Charles Van Cleave, Poulsbo, WA, pro se.

Domenique Kirchner, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, for defendant. Lt. Commander Dan Shanahan, Department of the Navy, Office of the Judge Advocate General, Washington, DC, of counsel.

## OPINION

HODGES, Judge.

Plaintiff accepted the terms of his medical discharge from the Navy and waived further review, then appealed to a military records correction board. After the Correction Board denied his application for review, plaintiff sought judicial review in this court. We ruled that plaintiff's waiver was knowing and voluntary. "The administrative record shows that the Navy followed its procedures conscientiously and in good faith.... Mr. Van Cleave's signature on the form of waiver is conclusive." *Van Cleave v. United States,* 60 Fed.Cl. 291, 293 (2004), *vacated by* 402 F.3d 1341 (Fed.Cir.2005). The court of appeals directed us to determine the scope of the waiver. The Correction Board's denial of plaintiff's application for review was arbitrary as described. We remand for additional findings by the Board.

## I. BACKGROUND

Navy Petty Officer Charles Van Cleave began suffering severe headaches in July 1996. A Medical Examination Board reviewed Mr. Van Cleave's medical record and referred him to a Physical Evaluation Board for medical discharge. The informal Physical Evaluation Board found Mr. Van Cleave unfit for further military duty. It recommended his discharge and a disability rating of ten percent. Mr. Van Cleave had the options of proceeding to a formal PEB for reassessment, accepting the preliminary findings of the informal PEB with qualifications, or accepting the preliminary findings and waiving a formal hearing. The Navy provided Mr. Van Cleave with standard exit counseling concerning these choices, and he chose to accept the preliminary decision and to waive his right to a formal PEB hearing. He was discharged from the Navy in July 1997 with a lump-sum severance pay of $46,720.80.

Mr. Van Cleave sought review of his disability rating by the Board for the Correction of Naval Records in August 1999, arguing that he received a lesser disability rating because the Medical Examination Board had mischaracterized his migraine headaches as "chronic headaches." The Correction Board reviewed Mr. Van Cleave's application in an "executive session" and denied his appeal.

The Correction Board explained to Mr. Van Cleave that the characterization of his condition as "chronic headaches" had not prevented him from receiving a higher dis-

ability rating. Instead, the PEB had not been persuaded that his headaches were severe enough to justify a disability rating greater than ten percent. The PEB assigns disability ratings on the basis of Medical Examination Board findings.

Plaintiff filed suit in this court seeking correction of his Navy medical record and a thirty percent disability rating. The Government moved to dismiss, arguing that Mr. Van Cleave had waived all subsequent review of his claim.[1] We dismissed the suit, holding that the waiver was voluntary and had been obtained in compliance with Navy regulations. *Van Cleave,* 60 Fed.Cl. at 293.

The court of appeals agreed that Mr. Van Cleave's waiver was voluntary, but remanded the case to determine the scope of plaintiff's waiver. *See Van Cleave v. United States,* 402 F.3d 1341 (Fed.Cir.2005). The remand order asked whether the waiver precluded further administrative review of the PEB's decision and affected Mr. Van Cleave's right to judicial review. *Id.* at 1344. The Federal Circuit addressed some of these issues thereafter in a similar case, *Gant v. United States,* 63 Fed.Cl. 311 (2004), *aff'd,* 131 Fed.Appx. 292, 2005 WL 1111754 (Fed.Cir.2005).

## II. DISCUSSION

### A. Voluntariness of Waiver

Mr. Van Cleave accepted the terms of his medical discharge and voluntarily waived further review. Resignations are presumed to be voluntary. *See, e.g., Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975) (holding resignations are presumed to be voluntary "unless plaintiff comes forward with sufficient evidence to establish that the resignation was involuntarily extracted").

Plaintiff received exit counseling as required by Navy regulations. He does not allege duress or misrepresentation, but argues that he would not have waived his right to a formal PEB and subsequent review if he had understood that the Medical Examination Board had labeled his condition "chronic headaches." [2]

Mr. Van Cleave argued that his resignation was involuntary despite the waiver because he was not aware at the time of the basis upon which the Board had reached its conclusion. Plaintiff "had no problem with the ten percent rating per se, but he would not have waived his rights had he known that he might have been entitled to a thirty percent disability rating. He contends that defendant's misrepresentation results in nullification of his consent." *Van Cleave,* 60 Fed. Cl. at 292. Thus, the focus of plaintiff's case at the trial level was whether his waiver was voluntary and knowing, and whether it was the product of duress or misrepresentation. Plaintiff's current argument does not go the voluntariness of his waiver, but appeals from a decision by the Board for Correction of Naval Records denying the relief that he requested.[3]

### B. Scope of Plaintiff's Waiver

■ Plaintiff accepted the findings of the informal Physical Examination Board and waived his right to proceed to a formal PEB. Thus, plaintiff asks us to review the decision of the Board for the Correction of Naval records, not that of the PEB. The Federal Circuit upheld this court's decision to dismiss a complaint seeking judicial review of an informal PEB in similar circumstances. *See Gant,* 63 Fed.Cl. at 312–13. Mr. Gant waived his right to proceed to a formal PEB by selecting the same waiver option as Mr.

---

1. The waiver option that Mr. Van Cleave initialed reads as follows: "I ACCEPT the Preliminary Findings [of the informal PEB]. I understand that it is subject to a legal review before becoming final. I waive my right to a formal hearing." (Admin. R. at 00225.)

2. Plaintiff had the opportunity to inquire into the nature of the information that the Physical Examination Board used to arrive at its conclusion. The waiver form that Mr. Van Cleave signed allowed him to accept the PEB findings subject to any conditions that he wished to list, or to

contest the findings and demand a formal hearing. *See Van Cleave,* 60 Fed.Cl. at 293.

3. Defendant raised a question whether this was a proper appeal from the Board for the Correction of Naval Records, stating that plaintiff's complaint and his requested remedy were "squarely aimed at the PEB determination ...." (Def.'s Mot. to Dismiss at 9 n. 3.) The result could be that an otherwise valid waiver could be avoided by appealing to the Correction Board and thence to this court.

Van Cleave did, using the same form. *Id.* This court found that Mr. Gant did so voluntarily and that his waiver precluded judicial review of the PEB's findings. *Id.* at 318–19. "Allowing plaintiff to maintain a claim after waiving it earlier would render the waiver meaningless." *Id.* at 318. The court noted that plaintiff's "waiving a formal [PEB] . . . prevented the Navy from itself having an opportunity to entertain any claim or objection and to develop a full record that this court now could review." *Id.*

Gant sought judicial review of the informal PEB's decision, not that of a correction board. Plaintiff's voluntary waiver of a formal PEB precludes judicial review of the informal PEB's determination. *See Gant,* 63 Fed.Cl. 311. Yet that waiver does not preclude judicial review of the Board for the Correction of Naval Records. This court's review of the Correction Board is limited, however. We do not review the underlying medical determination of the Physical Examination Board; review is limited to the Correction Board's denial of Mr. Van Cleave's application for review on the basis of the record before it. *See Pope v. United States,* 16 Cl.Ct. 637, 640 (1989).

## C. Review of the Correction Board

■ Courts must afford deference to decisions of boards for the correction of military records. *Pope,* 16 Cl.Ct. at 641 (citing *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979)). "While this court has jurisdiction to review the decision of a correction board or Secretary, such a decision is 'final and conclusive unless it is arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law or regulation.'" *Ewing v. United States,* 36 Fed.Cl. 159, 163 (1996) (quoting *Crispino v. United States,* 3 Cl.Ct. 306, 312 (1983)). When substantial evidence supports a board's action, and when the action is reasonable in light of all the evidence presented, the court will not disturb the result. *Pope,* 16 Cl.Ct. at 641. When reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the correction board. *Id.*

Correction boards must examine relevant data and articulate satisfactory explanations for their decisions. *Yagjian v. Marsh,* 571 F.Supp. 698, 701 (D.N.H.1983) (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). This includes making rational connections between the facts found and the choices made. *Id.* A court may find a correction board's decision arbitrary and capricious if the board entirely fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board, or is so implausible that it could not be ascribed to a difference in view or the product of board expertise. *See id.*

Mr. Van Cleave's first Medical Board Report labeled his condition as International Classification of Diseases diagnostic number 7840, the code for headaches; ICD number 3460 is the code for migraines. (App. to Def.'s Mot. to Dismiss at 129.) Plaintiff's second Medical Board Report, prepared over three months later, lists his "Summary Diagnosis" as "CHRONIC HEADACHE." (Admin. R. at 00040.)

The informal Physical Evaluation Board reviewed the Medical Board Reports in assigning a disability rating to Mr. Van Cleave. Disability ratings are defined by the Department of Veterans Affairs Schedule for Rating Disabilities. 38 C.F.R. § 4. The VA Schedule is similar to the International Classification of Diseases, but it is not identical. For example, the VA Schedule contains no code for simple headaches, though it does include migraines: code 8100. Ratings officers may rate a disability by analogy though "[w]hen an unlisted condition is encountered." 38 C.F.R. § 4.20. That is, the officer may "rate [the disability] under a closely related disease or injury" in the Schedule. *Id.* In this manner, the Physical Evaluation Board assigned plaintiff the VA Schedule code for migraines, a closely related disease. The PEB found plaintiff's "unfitting condition" to be "CHRONIC HEADACHES (7840)," but assigned him VA Schedule code 8100, "Migraines," and a disability rating of ten percent. (Admin. R. at 00227.)

Plaintiff disputes the characterization of his condition as "headaches" rather than as "migraines." Many of Mr. Van Cleave's medical records refer to "headaches" without noting the type. It is apparent from the records that his physicians considered a diagnosis of migraines. A July 21, 1996 examination chart is marked "migraine vs. cluster [headaches]." (Admin. R. at 00099.) A July 28, 1996 examination chart lists "migraine vs. cluster vs. tension [headaches]." (Admin. R. at 00100.) A March 4, 1997 examination chart is marked "migraine [headaches]." (Admin. R. at 00115.) A March 19, 1997 medical chart lists a Summary of Effect and Diagnosis as "migraine [headaches]." (Admin. R. at 00116.) The course of drug treatment prescribed to Mr. Van Cleave also suggests that he suffered migraines. He was treated with depakote, fiorinal, nortriptyline, sumatriptan, and verapamil, for example, many of which are prescribed for migraines and not for simple headaches. (Admin. R. at 00039.)

The Correction Board explained that the characterization of plaintiff's condition as chronic headaches, rather than as migraines, was harmless because the Physical Evaluation Board nonetheless assigned Mr. Van Cleave the VA Schedule code for migraines. (Admin. R. at 00175.) If plaintiff's Medical Board Reports had labeled his condition as migraines, the Physical Examination Board would have assigned him the same VA Schedule code. We agree with that conclusion. However, within the VA Schedule code for migraines, there are four disability ratings—0%, 10%, 30%, and 50%—depending on the frequency and severity of the attacks:

8100 Migraine:

| | |
|---|---|
| With very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability | 50[%.] |
| With characteristic prostrating attacks occurring on an average once a month over last several months | 30[%.] |
| With characteristic prostrating attacks averaging one in 2 months over last several months | 10[%.] |
| With less frequent attacks | 0[%.] |

38 C.F.R. § 4.124a. The issue is whether Mr. Van Cleave was assigned the correct disability rating. Whether he was assigned the correct disability rating depends on the frequency and the severity of Mr. Van Cleave's attacks.

Patients suffering from migraines with "characteristic prostrating attacks averaging one in 2 months over [the] last several months" receive a disability rating of ten percent. *Id.* Those suffering migraines with "characteristic prostrating attacks occurring on an average once a month over [the] last several months" receive a disability rating of thirty percent. *Id.* Mr. Van Cleave's medical records establish that he suffered attacks more frequently than once a month. His second Medical Board concluded that "at the time of initial presentation, he had one [headache lasting many hours] every three to four days." (Admin. R. at 00194.) The Medical Board Report noted that during one course of drug treatment lasting four to six weeks, there was "no change in his headache pattern." (Admin. R. at 00195.) Plaintiff experienced "no change in pattern" during another course of drug treatment lasting four to five weeks. (*Id.*) Medical examination notes for October 22, 1996 state that "he ... had four or five [headaches] since his last visit on 1 Oct 1996." Thus, he had four or five headaches in three weeks. (Admin. R. at 00026.) Mr. Van Cleave qualified for a thirty percent disability rating based on headache frequency alone.

The Correction Board's rationale for denying plaintiff's appeal was that his headaches "were not severe enough [to meet] the criteria for a 30% rating for migraine headaches." (Admin. R. at 00175.) The Correction Board explained that "the available records do not establish that you suffered prostrating attacks [at least] once per month in the months preceding your discharge." *Id.* This conclusion does not seem consistent with Mr. Van Cleave's medical records and other evidence in the record.

Mr. Van Cleave's medical records appear to provide evidence of prostrating headaches. The Medical Board Report concludes that

"[t]he patient states clearly that he is unable to perform his duties deployed at sea because of [his headaches]." (Admin. R. at 00196.) Plaintiff also points to other portions of his medical record and his course of drug treatment. His October 22, 1996 examination record notes that Mr. Van Cleave's headaches "leave him unable to continue working effectively" and usually require that he "lie down in a dark room and allow the headache to take its course." (Admin. R. at 00026.) The drugs that he was prescribed are used for migraines rather than simple headaches. (Admin. R. at 00195.) Medical notes contain references to migraines. The Correction Board reasoned that the characterization of plaintiff's condition as "headaches" is immaterial because Mr. Van Cleave was assigned a disability rating for the only analogous condition in the VA Schedule—migraines. (Admin. R. at 00175.) The factors that should have affected Mr. Van Cleave's disability rating, therefore, were the frequency and severity of his headaches, as delineated in the VA Schedule.

The Correction Board wrote that the "[Physical Evaluation] Board was not persuaded that [your] headaches were severe enough [to meet] the criteria for a 30% rating ... as the available records do not establish that you suffered from prostrating attacks averaging once per month ...." *Id.* Yet the distinction between a ten percent disability rating and a thirty percent disability rating is frequency of the headaches, not severity. The thirty percent rating requires an average of one or more prostrating attacks per month. The ten percent rating requires at least one prostrating attack every two months.

The Physical Evaluation Board must have been persuaded that Mr. Van Cleave suffered at least one prostrating attack every two months or it would not have recommended a ten percent disability rating. In other words, the PEB concluded that Mr. Van Cleave did suffer prostrating attacks, for if he had suffered less than one prostrating attack every two months, the PEB would have assigned him a zero percent disability rating for "less frequent attacks" instead of the ten percent rating that he was awarded.

*See* 38 C.F.R. § 4.124a. The remaining question is the frequency with which plaintiff suffered prostrating attacks.

The record does not distinguish between attacks that were prostrating and those that were not; it does not address the frequency of prostrating attacks at all. Plaintiff's medical records include references to headaches that required him to "lie down in a dark room [to] allow the headache[s] to take [their] course," and headaches that left him "unable to continue working effectively." (Admin. R. at 00026.) This is likely the evidence that the Physical Examination Board used to characterize plaintiff's headaches as being severe enough to justify the ten percent disability rating; i.e., "prostrating." If so, and if such headaches occurred more frequently than once a month, a thirty percent disability rating may have been justified.

The Correction Board did not address this issue or explain why it considered the references to Mr. Van Cleave's headaches in the medical records to be insignificant in denying his application for review. The Correction Board's conclusion that Mr. Van Cleave's headaches were not "severe enough to [meet] the criteria for a 30% rating" is logically inconsistent with the PEB's conclusion that Mr. Van Cleave's headaches were severe enough for the ten percent rating.

### D. Remedy

This court may provide relief by issuing orders directing correction of applicable records. 28 U.S.C. § 1491(a)(2). The court also has authority to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. *Id.* The Correction Board explained that Mr. Van Cleave received the disability rating for migraines by analogy. It appears that he might have been denied full disability compensation for migraine headaches, however. We remand plaintiff's application for reconsideration by the Board for the Correction of Naval Records and a hearing, if appropriate.

### CONCLUSION

Plaintiff's voluntary waiver did not preclude appeal to the Correction Board or judi-

cial review of the Correction Board's decision. We have not been able to determine from the administrative record that the Correction Board's denial of plaintiff's appeal has a rational basis. Therefore, the Board should reassess plaintiff's disability rating considering the frequency of plaintiff's attacks and the frequency of his prostrating attacks as appropriate. We remand plaintiff's application to the Board for the Correction of Naval Records for additional findings as described herein.

(1) The Board should review plaintiff's medical records to determine whether he suffered from migraines rather than simple headaches, then reassess his disability rating according to frequency if appropriate.

(2) If plaintiff's medical records demonstrate that he suffered from chronic headaches, the Board should reassess his disability rating based on the frequency of prostrating attacks.

(3) If Mr. Van Cleave's medical records do not distinguish between attacks that were prostrating and those that were not, and if the Board has no reason to doubt that all or most of plaintiff's attacks were prostrating, it should base his disability rating on frequency alone.

Defendant's Motion to Dismiss is DENIED. The Board should act as quickly as possible to review applicable records as directed, or to obtain additional information as needed. The Board or the parties may contact the court for clarification if needed; we expect to resolve all remaining issues promptly.