**Charles VAN CLEAVE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 03–1765C.

United States Court of Federal Claims.

April 15, 2004.

Charles Van Cleave, Poulsbo, Washington, pro se.

Domenique Kirchner, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington D.C., for defendant. Lt. Commander Dan Shanahan, Department of the Navy, Office of the Judge Advocate General, Washington, D.C., of counsel.

## OPINION

HODGES, Judge.

Mr. Van Cleave was separated from the Navy for disability in July 1997 with a ten percent disability rating for migraine headaches. He received severance pay of $46,720.80. Plaintiff sought an adjustment in August 1999 from the Board for the Correction of Naval Records, to reflect a disability rating of at least thirty percent. The adjustment he requested would place him on the permanent disability retirement list and entitle him to disability retirement pay rather than the severance payment he received upon discharge. The Board denied Van Cleave's application for relief, however, de-

termining that he was properly discharged for physical disability.

## BACKGROUND

Plaintiff Van Cleave was plagued with severe cluster headaches from July 1996 through February 1997. A Medical Board recommended that Petty Officer Van Cleave be referred to the Physical Evaluation Board for medical discharge. Plaintiff experienced approximately eight to ten migraines a month and was placed on medication for migraine headaches. He experienced other symptoms consistent with migraine headaches, such as photophobia, which required him to lie down in a dark room until the headache dissipated.

The Physical Evaluation Board found in April 1997 that Van Cleave was not fit for further military duty and that "the disability may be permanent." Plaintiff was awarded a preliminary disability rating of ten percent.[1] The Board rated plaintiff's condition by analogy because his medical board report showed that plaintiff suffered from "chronic headaches" instead of migraines. *See* SECNAVINST 1850.4C. The rating system did not contain a rating for chronic headaches. Van Cleave contends that he suffered from migraines and was treated for migraines.

The Navy notified plaintiff of this decision in a letter in May 1997, and explained his alternatives according to normal Naval procedures in such circumstances. A Navy counselor presented Van Cleave a form containing three options: (1) accept the preliminary findings and waive his right to a formal hearing; (2) accept the preliminary findings conditionally subject to any reservations that he wished to state; or (3) contest the preliminary findings and demand a formal hearing. Van Cleave accepted his preliminary findings, waived all rights, and was discharged from the Navy in July 1997. He was paid $46,720.80.

Plaintiff appealed the Physical Evaluation Board's decision to the Board for the Correction of Naval Records in August 1999. The BCNR denied Van Cleave's appeal by letter dated March 14, 2000:

> The rating you received for chronic headaches was based on the same rating criteria as those applicable to migraine headaches, the rating would not have been any higher had the headaches been formally classified as migraines .... The Physical Evaluation Board based its ratings in large part on the contents of your medical board report, which indicates that your headaches ... 'lasted many hours and ... *occurred every three to four days.*' The Board was not persuaded that you[r] headaches were severe enough [to meet] the criteria for 30% rating .... (emphasis added).

Plaintiff now states that the Physical Evaluation Board did not understand that he had been diagnosed with migraine headaches as opposed to frequent headaches. Had the Board known that he had migraines, his disability rating could have been as much as thirty percent. Defendant filed a motion to dismiss for failure to state a claim.

## DISCUSSION

Mr. Van Cleave acknowledges that he signed the form outlining his options voluntarily. He accepted the Physical Evaluation Board's findings and waived his right to a formal hearing voluntarily. He states that his resignation nevertheless was involuntary because he was not aware at the time of the *basis* upon which the Board reached its conclusion. That is, he had no problem with the ten percent rating per se, but he would not have waived his rights had he known that he might have been entitled to a thirty percent disability rating. He contends that defendant's misrepresentation results in nullification of his consent.

Plaintiff's argument pro se may be summarized as follows: Van Cleave was being treated for migraines; he received a diagnostic rating for migraines from his doctor. His Commanding Officer recommended that

---

1. A ten percent disability rating applies to a person who has "characteristic prostrating attacks averaging one in 2 months over last several months." 38 C.F.R. § 4.124a. A person who has "characteristic prostrating attacks occurring on an average once a month over last several months" is awarded a thirty percent rating. *Id.*

plaintiff be transferred "due to a pending disability discharge for severe disabling migraine headaches ...." Nevertheless, his physician submitted to the Board a report using a diagnostic code for "chronic headaches" rather than migraines. Plaintiff thinks that the report could have been written by an assistant, and the physician signed it without reading it. He assumes that the incorrect diagnostic code was an oversight. Still, Van Cleave thinks that the Board could not have believed that he had migraines based on the "chronic headache" diagnosis.

Defendant counters that the Board in fact did base its disability rating on Veterans Administration Code 8100, which is the code for migraine headaches. *See* 38 C.F.R. § 4.124a. Even if the PEB received incorrect information, the Board nevertheless used the correct diagnosis in calculating Van Cleave's disability rating. Plaintiff responds that the 8100 VA code provides a range of ratings from zero to fifty percent depending upon the frequency of migraines. If the PEB had known that all of his headaches were migraines, it might have given him a higher rating.

This court assumes the regularity of military records and the good faith of government officials. *See, e.g., Armstrong v. United States,* 205 Ct.Cl. 754, 762, 1974 WL 21688 (1974) (stating presumption that "the BCMR and military personnel ... performed their functions properly"). The law presumes that resignations are voluntary. *See, e.g. Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975) (holding resignations are presumed to be voluntary "unless plaintiff comes forward with sufficient evidence to establish that the resignation was involuntarily extracted"); *Nickerson v. United States,* 35 Fed.Cl. 581, 586 (1996) (finding voluntariness where plaintiff understood his options and agreed to a medical discharge).

Plaintiff does not contend that his acceptance of the waiver was involuntary. He does not argue that he was misled or that he received misinformation. His argument is that the Physical Evaluation Board was misled, and that the Physical Evaluation Board received misleading information.

The administrative record establishes that plaintiff had the opportunity to inquire into the nature of the information that the Board used to arrive at its conclusion. Option Number 2 on the form that Van Cleave signed allowed him to accept the findings subject to any conditions that he wished to list. Option Number 3 permitted him to contest the findings and demand a formal hearing. Instead, he accepted the findings and waived all rights. He received $46,720.80 in return.

## CONCLUSION

Plaintiff appeared pro se and argued his case as well as anyone could have. We considered his arguments very carefully, and sought additional detail in an effort to understand the summary of his position as stated above. Defendant states that Van Cleave's arguments concerning misrepresentation are not in plaintiff's complaint. We did not consider this to be a barrier because the complaint easily could have been amended.

Defendant also raises the question of whether this is a proper appeal from the Board for the Correction of Naval Records. It states that plaintiff's complaint and his requested remedy are "squarely aimed at the PEB determination .... A military disability claim is predicated upon the final action of the first board of competent jurisdiction." (citations omitted). We do not consider this issue to be determinative. Defendant does not argue that plaintiff's appeal either to the BCNR or to this court was untimely. The Physical Evaluation Board and the BCNR arrived at the same conclusion.

The administrative record shows that the Navy followed its procedures conscientiously and in good faith. In these circumstances, Mr. Van Cleave's signature on the form of waiver is conclusive. Once this court determines that a service member has accepted a voluntary discharge, we may not consider additional issues. *E.g., Tippett v. United States,* 185 F.3d 1250 (Fed.Cir.1999); *Sammt v. United States,* 780 F.2d 31 (Fed.Cir.1985).

Defendant's motion to dismiss must be GRANTED. The Clerk will dismiss plaintiff's complaint. No costs.