# United States Court of Appeals for the Federal Circuit

04-5133

CHARLES VAN CLEAVE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Charles Van Cleave, of Poulsbo, Washington, pro se.

Domenique Kirchner, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Brian M. Simken, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Robert H. Hodges

# United States Court of Appeals for the Federal Circuit

04-5133

CHARLES VAN CLEAVE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  March 31, 2005

_____

Before MICHEL, <u>Chief Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and LINN, <u>Circuit Judge</u>.

PLAGER, <u>Senior Circuit Judge</u>.

This is a military disability retirement case.  Charles Van Cleave was separated from active duty in the United States Navy with a disability rating that entitled him to severance pay.  In a complaint filed in the United States Court of Federal Claims, Van Cleave sought a higher disability rating, which would have placed him on the permanent disability retirement list and entitled him to continuing disability retirement pay.  The Court of Federal Claims dismissed the complaint for failure to state a claim on the ground that Van Cleave waived judicial review of his claim when he voluntarily accepted the findings of a Physical Evaluation Board ("PEB") during the Navy's disability evaluation process.  <u>Van Cleave v. United States</u>, 60 Fed. Cl. 291 (2004).  Because the trial court focused on the voluntariness of Van Cleave's actions rather than the scope of

the waiver at issue, we vacate the judgment of the trial court and remand for further proceedings.

## BACKGROUND

In July 1996, while on active duty in the United States Navy, Van Cleave began to experience headaches. After a period of limited duty, a local medical board referred him to a PEB. The PEB examined Van Cleave's medical records and in April 1997 issued a preliminary finding that Van Cleave was unfit for duty.[1] The PEB assigned him a preliminary disability rating of 10% and recommended that he be separated from active duty with severance pay.

In May 1997 the Navy notified Van Cleave of the PEB's preliminary findings and provided him a form entitled "ELECTION OF OPTIONS FOR PRELIMINARY FINDINGS OF UNFIT FOR DUTY." The form instructed him to select one of three options: (a) accept the preliminary findings and waive his right to a formal hearing; (b) conditionally accept the preliminary findings subject to conditions he could state; or (c) not accept the preliminary findings and demand a formal hearing.[2] Van Cleave selected option (a), which reads as follows: "I ACCEPT the Preliminary Findings. I understand that it is subject to a legal review before becoming final. I waive my right to a formal hearing." Appellee's App. at 8. Van Cleave also initialed a statement on the form indicating that he had been counseled by a Disability Evaluation System Counselor. A separate form was signed by a disability counselor certifying that Van

---

[1] The three-member PEB panel that makes preliminary findings is sometimes referred to as an "informal" PEB.

[2] When the PEB holds a formal hearing, the proceedings are sometimes referred to as a "formal" PEB.

Cleave had been counseled according to the requirements of SECNAVINST 1850.4C, the Navy's disability evaluation instruction in effect at the time. The PEB findings became final, and in July 1997 Van Cleave was discharged from the Navy with a medical disability.

In August 1999 Van Cleave applied to the Board for the Correction of Naval Records ("BCNR"), requesting that his disability rating be increased to 30%, which would entitle him to disability retirement pay. The BCNR considered his claim on the merits but ultimately denied his application in March 2000.

Thereafter, in July 2003, Van Cleave filed a complaint in the Court of Federal Claims challenging the BCNR's denial of his application and the underlying disability rating assigned by the PEB. The Government filed a motion to dismiss the complaint for failure to state a claim. The trial court found that by signing the Election of Options form voluntarily, Van Cleave "accepted the findings and waived all rights." Van Cleave, 60 Fed. Cl. at 293. This finding led the trial court to conclude that Van Cleave had "accepted a voluntary discharge," and therefore the court could not "consider additional issues." Id. The trial court granted the Government's motion and dismissed the complaint.

Van Cleave timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

                                    DISCUSSION

Much of the argument in the trial court and in the briefs on appeal addresses the question whether Van Cleave's signing of the Election of Options form, which ultimately led to his discharge with a medical disability, was voluntary. That is an issue usually

heard in cases in which a serviceperson contends that his or her discharge from the service was not "voluntary," in which case the right to continued pay and benefits accruing after the discharge would exist, and a claim for such would lie under the Tucker Act. That is a matter of jurisdiction for the Court of Federal Claims. See e.g., Tippett v. United States, 185 F.3d 1250 (Fed. Cir. 1999); Sammt v. United States, 780 F.2d 31 (Fed. Cir. 1985).

In this case, the trial court concluded that Mr. Van Cleave's signature on the form is conclusive: "Once this court determines that a service member has accepted a voluntary discharge, we may not consider additional issues." Van Cleave, 60 Fed. Cl. at 293. The court cited Tippett and Sammt. But the issue in this case is not one of jurisdiction; it is one of waiver. Both parties and the court agreed that the trial court had jurisdiction. The Government's motion, which the court granted, was to dismiss for failure to state a claim.

Van Cleave, acting pro se, raised the voluntariness issue by arguing, as he did in his brief on appeal, that "[t]he primary issue before the Court is whether Van Cleave's retirement from the Navy was voluntary or involuntary."[3] Appellant's Br. at 6. The basis for his argument was that at the time he signed the form he had been misled by a lack of information about his case, and he notes that the two naval officers and one doctor who conducted the medical review were equally ill-informed due to the state of the record before them.

More to the point, Van Cleave argues on appeal that the only thing he waived by signing the form was his right to a formal PEB. He notes that the form said nothing

_____

[3] In his pro se brief he also argued about the justiciability of his claim, an issue not raised by the facts.

about waiving his right to subsequent administrative review of his case to determine whether the Navy had committed an error, or whether judicial review of the matter necessarily was thereby precluded. The record indicates that Van Cleave received counseling as to his alternatives before signing the form. Even assuming, however, that the counseling thoroughly explained the Navy's disability evaluation procedures as set forth in SECNAVINST 1850.4C (a document of more than 100 pages), nothing in the instruction addresses the legal consequences as such of "accepting" the preliminary findings by choosing selection (a).

It is clear that by signing the form Van Cleave waived his right to have a formal PEB undertake to review the findings of the informal PEB, making the informal PEB's preliminary findings final. And it appears clear from the record that his signing of the waiver form was fully voluntary, in the sense that he was not under duress at the signing, and that he knew what the document said and what its purpose was. There is no evidence that the Navy misled him on that score; the trial court so found.

That does not answer the critical question: what is the scope of the waiver and was it a knowing waiver on Van Cleave's part? Did it include a waiver of any further administrative review of the PEB's now-final decision? Apparently the Navy did not so read it, since it granted Van Cleave's petition for a subsequent review of the case by the BCNR. Did it include a binding waiver of any right to judicial review? That for us is the $64 question.

The Government responds to the waiver issue by arguing that whatever lack of information Van Cleave was suffering from, the time to correct that was when the opportunity was given to him by the agency—i.e., he should have initialed (c), not (a),

on the Election of Options form. Thereafter, in the Government's view, he is precluded from any further administrative review because later administrative review would unduly burden and prejudice the Government. And the effect of the waiver is to preclude as well judicial review of the board's findings.

To Van Cleave's argument that any waiver of further review, including judicial review, was waived when the Navy undertook review by the BCNR, the Government responds that the BCNR is an administrative board designed to correct errors and remedy injustice, and not a court of law. According to the Government, when Van Cleave accepted the findings of the informal board in 1997 instead of objecting at the time and requesting a formal hearing, he could no longer complain about the terms under which his discharge was structured.

We find the Government's conclusory statements regarding the automatic bar to judicial review unpersuasive. In a case decided after the trial court's decision in this case, we held that a voluntary discharge from the Navy does not preclude a former service member from suing under the Tucker Act for benefits due regardless of the discharge—in that case, as in this one, the benefits of a higher disability rating. See McHenry v. United States, 367 F.3d 1370 (Fed. Cir. 2004). We noted in passing that even if acceptance of a PEB decision may act as a bar to a later claim, citing the dictum in Maier v. Orr, 754 F.2d 973, 984 (Fed. Cir. 1985), "the bar is not jurisdictional in nature." McHenry, 367 F.3d at 1377 n.6. So the issue remains: before dismissing the case for failure to state a claim, it is necessary to know the scope of the waiver—did it include a bar to further administrative review and a bar to any judicial review? If so, was it a knowing waiver—did the service member understand what he was waiving?

(Compare the waiver language in the form at issue here with the language in the waiver McHenry signed following his formal hearing: "I agree with and accept the findings of the Regional Hearing Panel. I am not going to appeal or rebut the final decision . . . ." Id. at 1375.) On the basis of the record before us, we do not discern a clear answer to this issue, or that there is any clear precedent to guide us.

Because of the way the case was presented and argued, the trial court did not have the benefit of a full and thorough airing of the waiver issue and an exploration of the relevant facts and law, including, as urged by the Government, how and why an acceptance of the findings otherwise could be conclusive. Accordingly, we vacate the judgment of the trial court and remand for further proceedings consistent with this opinion.

VACATED and REMANDED